THE STATE EX REL. LEACH, APPELLANT, *v.* SCHOTTEN, WARDEN, APPELLEE.

[Cite as *State ex rel. Leach v. Schotten* (1995), 73 Ohio St.3d 538.]

(No. 94–1594—Submitted July 12, 1995—Decided August 30, 1995.)

*Letson, Griffith, Woodall & Lavelle Co., L.P.A.,* and *Lynn B. Griffith III,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Miltina A. Hicks,* Assistant Attorney General, for appellee.

---

*Per Curiam.* In order to be entitled to a writ of mandamus, Leach had to establish that he possesses a clear legal right to the relief prayed for, that Schotten is under a clear legal duty to perform the requested act, and that Leach has no plain and adequate remedy at law. *State ex rel. Carter v. Wilkinson* (1994), 70 Ohio St.3d 65, 637 N.E.2d 1.

Leach contends in his first proposition of law that a regulation of a state correctional facility which has the effect of completely prohibiting inmates from getting married while incarcerated is not reasonably related to legitimate penological interests and is thus unconstitutional under *Turner v. Safley* (1987), 482

U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64. In his third proposition of law, Leach asserts that where an inmate and his fiancée have taken all steps within their power necessary to get married, a warden of an Ohio prison possesses a legal duty to transport the inmate to the county probate court to enable the inmate to obtain a marriage license.

R.C. 3101.05(A) provides that "[e]ach of the persons seeking a marriage license shall personally appear in the probate court within the county where either resides * * *." While R.C. 3101.05(A) provides for a waiver of the personal appearance requirement in cases involving "illness or other physical disability," there is no provision for a waiver due to incarceration.

In *Turner, supra,* 482 U.S. at 95–99, 107 S.Ct. at 2265–2267, 96 L.Ed.2d at 83–85, the Supreme Court of the United States held that the right to marry, protected by the federal Constitution, applies to prison inmates and that a state prison regulation which almost completely banned prisoners from getting married was unconstitutional because it was "not reasonably related to legitimate penological objectives." See, also, Annotation, Federal Constitutional Right to Marry—Supreme Court Cases (1989), 96 L.Ed.2d 716, 721–722, Section 4[c]; *Hanselman v. Fiedler* (E.D.Wis.1993), 822 F.Supp. 1342, 1345.

Leach claims that Schotten's prison policy of not transporting inmates to the probate court is the legal equivalent of a regulation banning prisoners from being married, and that *Turner* requires the issuance of a writ of mandamus. The court of appeals, however, determined that Leach was not entitled to a writ because *Turner* "does not impose a duty upon a warden to either invite the clerk of court of common pleas to the institution to procure relator's signature on a marriage license, or transport relator to the clerk to obtain a marriage license."

At the telephonic hearing, Leach testified that the clerk of the probate court refused to send anyone to TCI to obtain Leach's signature for the marriage license. Leach conceded that Schotten could not compel the clerk to go to the prison to obtain Leach's signature. The clerk was neither named nor joined as a respondent in Leach's mandamus action. Mandamus will not compel a vain act. *State ex rel. Snider v. Stapleton* (1992), 65 Ohio St.3d 40, 42, 600 N.E.2d 240, 241. There was also no evidence that Schotten prevented the clerk from going to TCI to obtain Leach's signature. The court of appeals properly denied Leach's request for a writ of mandamus to compel the warden to allow the clerk to visit the prison to procure Leach's signature on the marriage license.

As to Leach's request for a writ of mandamus to compel Schotten to transport him to the probate court so that he could, pursuant to R.C. 3101.05(A), personally appear to sign the marriage license, Leach introduced no evidence at the hearing concerning this request. Further, to the extent that he claims that *Turner* mandates Schotten to transport him to the court, the federal constitutional issue

examined in *Turner* need not be reached in the context of this appeal, since Leach possesses an adequate remedy at law which precludes his request for extraordinary relief by mandamus.

Leach could have raised the same contentions regarding the prison policy allegedly affecting his constitutional right to marry by filing a federal civil rights action under Section 1983, Title 42, U.S.Code, which allows state prisoners to challenge the conditions of their confinement. *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 91, 637 N.E.2d 306, 309; see, also, 1 Schwartz & Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees (2 Ed.1991) 619–620, Section 10.6 (claims for declaratory relief which do not implicate the fact or length of confinement may be asserted under Section 1983). In fact, Section 1983 actions have been specifically used by prisoners to challenge the constitutionality of prison regulations which allegedly impinged upon their constitutional right to marry. *Hanselman, supra; Buehl v. Lehman* (E.D.Pa.1992), 802 F.Supp. 1266; *Landrum v. Gomez* (C.A.9, 1994), 1994 WL 546213, table decision at 37 F.3d 1505. A Section 1983 action can provide declaratory, injunctive (both mandatory and prohibitive), and/or monetary relief. Schwartz & Kirklin, *supra,* at 830, Section 16.1. Consequently, to the extent that Leach raised federal constitutional claims, he is not entitled to a writ of mandamus because Section 1983 provided an adequate remedy in the ordinary course of law.

Although Section 1983 does not constitute an adequate remedy at law which precludes extraordinary relief where violations of state law are raised, *State ex rel. Carter, supra,* 70 Ohio St.3d at 92, 637 N.E.2d at 309, the only violations of state law raised by Leach in his complaint were claims based on R.C. 5120.38 and 5120.39, which refer to the duties of prison wardens and superintendents. As noted by the court of appeals, these statutes "do not create a duty to perform the acts requested by relator." Leach's claims on appeal are based solely on his alleged federal constitutional rights.

Based on the foregoing, the court of appeals did not err in denying the writ of mandamus. All the propositions of law raised by Leach, including his contention under his second proposition of law that the court should apply a stricter federal constitutional standard than that applied in *Turner,* are without merit, since even if Leach were correct in his legal argument, mandamus would still be inappropriate.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

WRIGHT, J., dissents.

WRIGHT, J., dissenting. At the outset, I must express my disagreement with the emphasis placed on the facts as presented in the majority opinion. The majority focuses on Leach's attempts to have the clerk of the probate court of Trumbull County brought to Trumbull Correctional Institution ("TCI") to have him sign the marriage license. Leach did request the court to "compell [sic] the respondent to invite the clerk of the court of common pleas to visit the institution to allow the procurment [sic] of relators [sic] signature on a license of marriage." However, throughout his pleadings, Leach clearly stated his desire to have the respondent take him to the probate court. Leach conceded, and I agree, that the clerk cannot be compelled to go to TCI. Leach's primary focus was that the court compel the respondent to transport him to the probate court.

More importantly, Leach offered any number of alternatives to enable him to obtain the marriage license. In addition to his attempts to either travel to the court or to have the court come to him to procure his signature on the license, Leach inquired of the appellate court whether the license could be faxed to the prison where he could sign it under oath in front of witnesses. None of these alternatives was implemented.

The majority has also referred to the fact that Leach did not present any evidence at the telephonic evidentiary hearing. Leach's response is that he did not present any evidence because he was not informed of the telephonic hearing until just before the hearing itself took place. In point of fact, it is undisputed that Leach was unable to adequately prepare because of this lack of notice. Leach was acting *pro se* and should not have been expected to be able to offer a panorama of legal arguments without adequate preparation.

The majority asserts that to the extent that Leach raised federal constitutional claims, he is not entitled to a, writ of mandamus because Section 1983, Title 42, U.S.Code provides an adequate remedy in the ordinary course of law. I certainly agree that inmates previously have used Section 1983 to challenge the constitutionality of prison regulations that allegedly impinge upon their constitutional rights. However, the mere existence of another remedy does not bar the issuance of a writ of mandamus in this matter. *State ex rel. Butler v. Demis* (1981), 66 Ohio St.2d 123, 124, 20 O.O.3d 121, 122, 420 N.E.2d 116, 117, citing *State ex rel. Emmich v. Indus. Comm.* (1947), 148 Ohio St. 658, 36 O.O. 265, 76 N.E.2d 710. In order for the remedy at law to be an adequate remedy, it must be *complete in its nature, beneficial, and above all speedy. State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 91, 637 N.E.2d 306, 308. Furthermore, the remedy must be adequate under the circumstances. *State ex rel. Liberty Mills, Inc. v. Locker* (1986), 22 Ohio St.3d 102, 104, 22 OBR 136, 137, 488 N.E.2d 883, 886.

Forcing Leach to file yet another lawsuit would not provide a complete, beneficial and speedy resolution to his problem. Leach originally filed for the writ on February 10, 1994. Leach and his fiancée have been forced to wait for seventeen months for this suit to wind its way through the judicial system. There is no telling how much longer Leach will have to wait to enjoy his fundamental right to marry if he is forced to file a suit under Section 1983. Additionally, by issuing the writ of mandamus, we would avoid a multiplicity of lawsuits and promote judicial economy. There is no reason for suits of this nature to congest the court system any longer than they already have.

It is uncontested that an inmate has a fundamental right to marry. Thus, Leach clearly possesses a clear legal right to the relief requested. The United States Supreme Court clearly established this right in *Turner v. Safley* (1987), 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64. The court in *Turner* held that prison inmates have a constitutionally protected right to marry. The court further held that when a prison regulation impinges an inmate's constitutional rights, the regulation will be held valid if it is reasonably related to legitimate penological interests. The court set forth four factors to determine reasonableness: (1) whether there is a "valid, rational connection" between the regulation and a legitimate and neutral government interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, on other inmates' liberty, and on the allocation of limited prison resources generally; and (4) the absence of ready alternatives. The existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns. *Id.* at 89–90, 107 S.Ct. at 2262, 96 L.Ed.2d at 79–80.

The concerns expressed in *Turner* should be addressed when determining whether Leach should be transported to Trumbull County Probate Court. However, it does not appear from the record that any of the four factors enumerated in *Turner* have been met. It does not appear that there is a "valid, rational connection" between Schotten's refusal to transport Leach and any legitimate penological interest. The respondent in this case has stated only that there are "security concerns and reasons why there are regulations that govern how an inmate can be married." The exact nature of the concerns and the reasons why the regulations exist were never specified. Respondent also has failed to specify why transporting Leach to the courthouse to obtain a marriage license is more of a security concern than permitting an inmate to attend a funeral, transporting an inmate to the hospital, or transporting an inmate to the courthouse for other legal proceedings, as has been done in the past.

Leach's only other alternative, aside from abandoning his constitutional right to marry, is to have the clerk of courts go to TCI. Leach's attempts to have this occur have also been unsuccessful. As such, Leach is left without any alternative means of exercising his fundamental right to marry. As Leach asserted that he would pay for his transportation to Trumbull County Probate Court or pay the costs of the clerk to go to the prison, there would be *de minimis* impact on the prison staff and on prison resources. Finally, Schotten's refusal to transport Leach to the Trumbull County Courthouse to obtain his marriage license is an exaggerated response to the penological concerns raised by him. As discussed above, respondent has only stated that security concerns exist. The nature and extent of those concerns are unknown to this court, as they were not specified anywhere in the record. As the security concerns are not serious enough to enumerate, I can only assume that the outright refusal to enable an inmate to exercise a constitutional right is indeed an exaggerated response.

The court of appeals denied Leach's complaint for a writ of mandamus because Leach failed to demonstrate that respondent is under a clear legal duty to act as requested. I agree that the obligation of transporting a prisoner to the courthouse in order to enable the prisoner to obtain a marriage license is not specifically enumerated in the statutory duties imposed upon the warden of a correctional institution. However, the warden *is* under a duty to ensure that an inmate's constitutional rights are protected. As stated above, one of these rights is the fundamental constitutional right to marry.

I can only conclude that respondent simply chooses not to be bothered by Leach and his request. Respondent has asserted that he just did not believe that he was under an obligation to transport Leach or to invite the clerk of courts to TCI to enable Leach to obtain a marriage license. Although I would like to give great deference to the law enforcement community, I simply cannot support respondent's position in this particular instance. It appears that respondent simply does not want to be inconvenienced by granting Leach his constitutional rights as outlined above.

Accordingly, I respectfully dissent.